## No. 3094

### Second Circuit

--------

### BROOKS v. HARVEY & CO.

(December 21, 1927.　Opinion and Decree)

--------

*(Syllabus by the Editor)*

1. **Louisiana Digest—Evidence—Par. 58, 59.**

The burden of proof is on the defendant to show his defense that a new motor purchased by him was to be paid for, only in the event that the manufacturer, after inspection, should say that the old motor taken out of the car was not defective.

2. **Louisiana Digest—Evidence—Par. 351.**

Where the preponderance of evidence does not prove the special defense that defendant was to pay for the motor purchased only in the event of a certain contingency, there must be judgment for plaintiff.

**Louisiana Digest—Reconvention—Par. 1, 2, 14.**

A reconventional demand based on a contract between plaintiff and a third party will be dismissed.

Appeal from the Third Judicial District Court of Louisiana, Parish of Jackson. Hon. S. D. Pearce, Judge.

Action by F. O. Brooks against F. D. Harvey & Company.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

William J. Hammon, of Jonesboro, attorney for plaintiff, appellee.

T. S. Price, of Ruston, attorney for defendant, appellant.

REYNOLDS, J. Plaintiff is a dealer in automobiles and automobile accessories and sues defendant for $117.25 claimed to be due upon open account, $110.00 of which being the price of a new motor for an automobile, and $7.25 being transportation charges from New Orleans to Jonesboro on an old motor for an automobile paid by plaintiff for defendant's account.

The defense is that defendant purchased an automobile from plaintiff and the motor in it proved defective and defendant returned it to plaintiff to be shipped to the manufacturer to be repaired and that plaintiff put a new motor in the automobile to be used by defendant until the old motor could be repaired and put back; that plaintiff shipped the old motor to the manufacturer who returned it to him without repairing it and that plaintiff still has the old motor and neglects and refuses to have it repaired and put back in defendant's automobile.

In the alternative, should the court hold that defendant is liable to plaintiff as alleged, defendant asks judgment against plaintiff for $117.25 with 5% interest from March 15, 1925, as the price paid by defendant for the old motor.

On these issues the case was tried and there was judgment in favor of the plaintiff as prayed for and defendant appealed.

OPINION

Plaintiff sold a new automobile to one R. J. Trotter, who paid for it partly with an old automobile and partly with promissory notes which plaintiff sold to a third person.

By some arrangement between Trotter and defendant the automobile passed into the possession of defendant.

About four months after the sale defendant brought the car to plaintiff's place of business and at his request plaintiff installed a new motor in it.

Defendant desired plaintiff to repair the old motor in his shop without cost to him or to ship it to the manufacturer to be repaired by him without cost to defendant on the contention that the motor was originally defective. Plaintiff refused to do either, asserting that the inability of the motor to work properly was the result of imperfect lubrication and misuse since the sale.

Thereupon defendant himself shipped the motor to the manufacturer, who, after some correspondence with plaintiff, shipped it back to plaintiff for the reason that in his opinion the needed repairs could and should be made in plaintiff's workshop.

Plaintiff paid the return transportation charges on the motor to avoid prejudicing his business relations with the manufacturer.

Defendant having refused to pay for the new motor or the return transportation charges on the old one, plaintiff brought this suit.

It is defendant's contention that plaintiff installed the new motor in his automobile

to be used without cost until the old motor could be repaired and that this also was to be done by plaintiff without cost to defendant.

The burden of proving this was on defendant and we do not think he has made out his case.

Defendant testified (Evidence, page 27, et seq.):

"I told Mr. Brooks—Mr. Trotter was working for me and I was keeping up this car and he had the car in the shop one time at Junction City with it and paid thirty ($30.00) dollars on it and I told him we were not going to keep the motor up in that condition, and I went to Mr. Brooks' place and I told Mr. Brooks this: You put a new motor in that car because I am not going to pay for repairs on it, the motor is not right; and he said, I don't know whether it is or not. I said: You put a new motor in that car and ship the motor back to the Ford people and if they say the motor is all right and no defect in it, I will pay you for the motor, and if they come back and say that it was not all right, well, you can make it good. Mr. Brooks has my motor charged with freight there and back. Mr. Brooks crated this motor and shipped it to the Ford people at New Orleans. They didn't unpack it. They wrote me back telling me that Mr. Brooks should be equipped to see whether this motor was all right; and the motor has never been unpacked yet and he is suing me with freight charges there and back and the Ford people didn't unpack it and look at it and Mr. Brooks has not unpacked it to see whether it is my fault or whether it is his fault. The motor has never been unpacked. He is suing me for the freight, suing me for the engine, and the Ford people wrote me and told me that Mr. Brooks should be equipped to say whether it was all right or not. * * * I told him, if you ship this motor to the Ford Motor Company and they examine that motor and say that it was correct and right when it came out of the factory, I will pay you for the motor and if they don't I don't pay you for it."

* * * *

"Q. Did Mr. Brooks know at that time that this was the same car that he had sold Mr. Trotter?

"A. Absolutely, he knew it was Trotter's car; told him what I was doing; I was keeping up the car, and I was not going to keep up a defective part like that * * * *"

Plaintiff, F. O. Brooks, testified (Evidence, page 3, et seq.):

That he was an experienced mechanic in the repair of automobile machinery, and that:

"Q. With reference to the engine, tell me about that?

"A. It was just like all other Ford engines, as good as I ever sold. It was mistreated. I sold it to Mr. Trotter.

"Q. How long was it after you sold it when complaint was made?

"A. There was no complaint until the whole thing came up. Mr. Harvey came in and wanted me to send the car to the company, which was about four months after it was sold; and in the meantime they came in for service, and we had done more or less service to it, and just before Mr. Harvey made his complaint we had tightened all bearings in the motor, a thing that we are not supposed to do at all, that is not our fault and it is not free service, but we did it in this case to be sure we were doing all we could; and the thing that was the matter, the motor was damaged by lack of lubrication and hard use.

"Q. He said that you shipped that engine to the Ford Motor Company at New Orleans?

"A. No, sir; I refused to ship it. I told him that I had done all that was possible to do; and he shipped it himself and paid freight on it.

* * * *

"Q. What was said, if anything, when you put the new motor in the coupe?

"A. That was all settled; the motor had been shipped by Mr. Brooks, and he asked me what I would sell him a new motor for; and at that time the installation fee was $6.00, and I told him that I would sell him one at $110.00 and not charge any installation fee. I deducted the installation fee. I sold it to him personally.

"Q. Was it at that time agreed or understood in any way that you were replacing the motor that had been damaged by misuse and lack of lubrication?

"A. It was understood that I was not going to do anything, and the motor at that time was at New Orleans; I had discharged the case and I had done at least three or four times as much as I ordinarily do to a motor trying to take care of these parts.

"Q. The motor was damaged on account of rough treatment and lack of lubrication?

"A. Yes, sir.

"Q. And not as a defect in the material or workmanship as an original proposition?

"A. No, sir."

Defendant does not testify that he did not buy the new motor but only that he was not to pay for it in a certain contingency, namely, that the manufacturer, after inspection, should say that the old motor was all right and had no defect in it.

Plaintiff denies that he made any such agreement with defendant, and thus sets off whatever probative force defendant's testimony may have, and as the burden was on defendant to establish his defense by a preponderance of the evidence it falls for lack of proof.

Defendant's reconventional demand seems based upon the theory that the automobile from which the motor was removed was purchased by him from plaintiff. This is a misconception. Plaintiff, Trotter and defendant himself all testify that the automobile was sold by plaintiff to Trotter. Defendant does not even claim to have bought the automobile from Trotter. He testifies that the owner of the car, Trotter, was working for him and that he was merely keeping the car up.

There was no privity of contract between defendant and plaintiff so that even if the motor was originally defective and plaintiff was under contractual obligation to repair the defect (as to which we express no opinion) the obligation was not in favor of the plaintiff.

We find no error in the judgment appealed from and accordingly it is affirmed.